vs. Mathias 5-16-0362 My name is Chris Sedilla. I am here on behalf of Darren Mathias, the defendant appellant in this matter. Mr. Mathias is present in the courtroom. Mr. Mathias was charged with a single count of domestic battery and after a bench trial was convicted. The underlying incident occurred Thursday, December 10, 2015 in Shelby County, Illinois. The incident involved his estranged wife, Kimberly Mathias. This appeal followed. The majority of the facts, I don't believe, are in dispute. This occurred on Thursday morning around 10 a.m. at a shed, a coal barn utility shed, that the defendant ran a farming operation out of. He was working that morning. Mrs. Mathias appeared outside of the shed. An argument ensued. The argument carried on inside the shed. They left the shed and went back inside. Mrs. Mathias was asked to leave a number of times. She did not. The defendant physically removed her from the shed and locked the door after she exited. Can you make it clear to me who actually had possession of the shed in the divorce proceeding? In the divorce proceeding, the parties testified that there was an order granting Mrs. Mathias possession, exclusive possession, of the residence. How this was It's 80 acres, I believe, with a house, some outbuildings. There's significant space between the house and the shed. At least 200 feet was testified to. The divorce order indicated he still was able to use the property for the farming operation, but at the end of the day, this property wasn't owned by either Mrs. or Mr. Mathias. It was owned by his father, Leland Mathias. Right, I found that unusual that she got possession and there was no ownership amongst either of them. I think it's outside of my review, but I don't know. The reason I'm asking is, there was some reference to the fact that the doors, the locks had been changed to the shed doors. Correct. So, and she didn't have a key. She did not. So, I mean, why didn't one party just walk away? Why didn't he walk away if he didn't have possession of the property? Well, I think that he did have possession of the shed on the day in question because he was inside. He was running the farm operation out of the shed. But in terms of walking out of the shed, he did. And she followed him out. He walked back in. She followed him in. Now, in hindsight, had he locked the door on one of these occasions? But, I mean, this was, they were arguing, and he was trying to get her out of the shed. She was refusing to leave. You know, that is where the issue really lies. He was trying to get her out of the shed, and this is what he felt he had to do to end the trespass. And, as I understand it, there was another employee of his there? Yes. In and out of the shop as well? Well, Brian Altshed, I don't think the evidence was that he came in and out of the shop. He was in the shop. He was working on a piece of farm equipment, and I believe he was inside the shop the whole time. Okay. And he witnessed everything. And I think his testimony and Mrs. Mathias' testimony and the defendant's testimony are all relatively consistent about the in and the out and the arguing. So, I guess it was clear in the order that she was to get exclusive possession of the house, but there wasn't any rights designated about her ability or inability to go in and out or utilize the rest of the farmstead, other than he had the right to continue using the rest of the farmstead for his farming operations. Does that kind of state your understanding? Yes, Your Honor. The order wasn't introduced at trial, but the testimony was that she was awarded possession of the home or the marital residence, and there was nothing on the remainder of the farm other than he was able to use it to continue farming. And he apparently then took it upon himself to lock her out or almost take exclusive possession of at least the shop. Is that fair to say? The testimony was that it was unlocked before 2012 when the divorce proceedings commenced because he lived on the property, and when he moved out of the property, he locked it. And there's no evidence in the record of why it was locked. I presume it was because there was no one monitoring the access to it. Okay. Go ahead. The three issues we had on appeal, and we've gotten into the first, is the state is asserting that we didn't properly assert or raise the affirmative defense, and we've been discussing lawful possession. I believe that the record shows that Mr. Mathias was lawfully in possession of the shed by one of two ways. His father was the owner of the shed, and he was there on behalf of his father. And then alternatively, he had the right to farm, and I don't think there was any dispute that he had the access to the shed to conduct the farming operation. The other is the reasonableness of his belief that she was a trespasser, and this is where I think the evidence... But doesn't that mean that he had exclusive possession? Well, the statute just says that he has to show that he had lawful possession, and I believe that the evidence demonstrated, at least to raise the affirmative defense, that he was lawfully in possession of the shed. But if she also would be in lawful possession of the shed, then how can he exclude her under a trespassing theory? And that's the root of our argument, is that we, to raise the affirmative defense, we need to show sufficient facts to raise it. But then it becomes the state's burden to show that his belief wasn't reasonable beyond a reasonable doubt, and that's where her lawful use of the shed would come in. And that's where we don't believe that the state sufficiently proved beyond a reasonable doubt that there was something that made his belief unreasonable, that her possession. But it's your burden to begin with, to get to the point of possession. Absolutely. That's why I asked him originally. Can joint property owners have possession for the affirmative defense of trespass? In the context of a criminal trespass, there is case law that indicates that a husband and wife, where the wife has been awarded sole possession of the... But you've already conceded that's not the case here. I don't know that I'm following your question. Well, there is no question that he did not have exclusive possession of the shop. Well, he was lawfully in possession of the shop by virtue of his father, and there's no evidence that she had any legal basis to have possession of the shop. I think that's a court order, granting her possession. Ownership is one thing, but a court order might be another. And I agree. The court order, though, the testimony was it was specific to the home, the marital residence. And as a legal matter, I think that the outbuilding, she considered the home to include the outbuilding, but the testimony was the order was relating to the home itself. And marital residence has a definition, and it excludes a detached garage. And I think that's analogous to this situation, that if there was a court order ordering possession of the marital residence, that that wouldn't cover this property. And I think what I'm getting is that you're saying it was silent with respect to if she had further possession or right to use or whatever language of any of the other. Because he had the right and possession to use the rest of the farmstead, correct? The testimony was that the order granted him the right to use the – But it didn't say exclusive right. The only testimony, the testimony indicated that the only exclusive right was given to her in regards to the home. Correct. Did the court order – I'm sorry. Did the court order get admitted to trial? It did not. Was there any dispute about it, about the language? It didn't appear in the testimony. The testimony was that she was granted exclusive right to the home. The only dispute at trial would have been her definition of – she testified that her definition of home included the entire surrounding property. What about his use of the farmstead? Was there language in there that described that? In the order? Yes. The testimony was just that his use was permitted under the order. And I don't believe that was in dispute by any of the parties. Is the order in the record? It's not in the record. Was the – the shed was a separate building 200 feet away from the house? Correct. Were there more than one driveway? Your Honor, there's an aerial photograph. I don't recall the answer off the top of my head, but I think it would be reflective in the aerial photograph. I'd be happy to direct you to that. And who was the farming operation? Was that the father-in-law or was it also the defendant? The farming operation was a family farming operation. Leland Mathias, the father, was the original farmer. He was in the process of retiring around this time. Mr. Mathias, the defendant, was primarily running the farming operation. Was there any evidence of how there was a split on the – what was produced? In terms of the grain sales? Yes. There was no evidence introduced at trial on that, no. I have one more question for you. Did the defendant have to surrender his FOID card as a result of this? He did, Your Honor. You'll have a few moments. Thank you. Jennifer Camden. May it please the Court? Counsel. Jennifer Camden on behalf of the people. This case is not about a lawful occupant of land asserting a right against an unlawful trespasser. It's about a divorcing couple arguing over the disposition of marital property that was being stored in and around an outbuilding near the marital home and about the physical force that the husband used to stop his wife from taking pictures of that property to document its existence. Now, if the State is arguing that the defendant failed to sufficiently raise the affirmative defense of justifiable use of force in defense of real property or alternatively that the State disproved that affirmative defense beyond a reasonable doubt, ultimately the issue is one of sufficiency of the evidence because even if the defendant presented evidence on each element of the affirmative defense and the State's arguing that he did not, a rational finder of facts could have found that the State disproved at least one and the State argues all of those elements of that defense beyond a reasonable doubt. A rational finder of facts could have found beyond a reasonable doubt that Kimberly, the wife, was not a trespasser on the land on which she had lived for 20 years or that the defendant did not reasonably believe that she was based on her unrebutted testimony that neither a court order nor the property owner had barred her from the property or that the defendant didn't reasonably believe that physical force was necessary in order to end her presence in that shop. In other words, who was asked she would leave? I beg your pardon, Your Honor? Who was asked she would leave? I don't understand that part about physical force. The State's arguing that the defendant did not reasonably believe that physical force was necessary to remove her from the shop as an alternate to arguing that she was not a trespasser, the reason being that the evidence, and there's video evidence of this entire encounter, by the way, but the video evidence, the testimonial evidence, shows that she wanted to talk to him, not to be in the shop, and that she was following him in and out of the shop. In fact, defense counsel conceded at trial that if he had left the shop that she would have followed him out of the shop. That would have ended her presence inside without the resort to physical force. Also, a rational fact finder could have found that he employed more force than was reasonably necessary. So for any and all of us. Isn't that the gist of it? I beg your pardon, Your Honor? Isn't that the gist of it? I mean, if you exclude for a moment all the ownership issues and the right to be there, the question is whether maybe he used more force than was justifiably necessary. That is certainly a basis on which the trial court could have found that the State had disproven any asserted affirmative defense beyond a reasonable doubt, and it's certainly a basis on which this court could confirm. Yes, Your Honor? Well, it seemed to me that the judge in his order didn't really resolve this whole land dispute. He didn't really know who had the superior rights. Am I reading that correctly? You read it differently. No, Your Honor. I read it the same way. He said that the problem was that he wasn't sure. How did he phrase it? That there was an attempt to make a defense in the nature that the defendant had the right to be at the property and the victim did not believe the testimony shows there's really no clear answer to that. And, again, I would reaffirm what the counsel said, that the divorce court order is not in the record. So we don't know whether or how the order addressed the right of Kimberly to be present in this shop property. What we do know is that Kimberly testified, and, again, this testimony was unrebutted, that no court order barred her from the shop and that neither had the property owner, her father-in-law. She also testified that she had just as much right to be in the shop as he did. And, notably, the defendant never testified that Kimberly was legally barred from the shop. In fact, he testified that he was, quote, not exactly sure whether she had access to it. Now, what we do know is that the divorce court order awarded her exclusive use of the home and that under an agreement, which also is not in the record, the defendant had the right to enter the property to continue the farm work. But the divorce court could have allowed the defendant access to the shop without barring Kimberly from it. Did the court order say that she's allowed to have exclusive possession of the house? Or did it say, like, so-and-so, rural lot number three? I don't know if it's got an address. Was that address of the property given or was it the house? Yeah. What's it say? Your Honor, the order's not in the record, so we don't know. So you don't know, even if she was allowed to be there in the first place in the house? Well, all we know from the record is that she was awarded exclusive use and possession of the house. Now, what's that? Where did that come from? What did it say? Is that in an order or in a... We know that from testimony. The testimony was the judge said she could use the house. Yes. Did the judge make a finding that she could use any other part of the property? The trial judge at this trial, Your Honor? Yes. The trial judge made a finding that there wasn't evidence as to whether the defendant had a superior right to be present on the shop property than she did. So they said that she doesn't know. Correct. Did the... As I understand the testimony, she was granted temporary exclusive use and possession of the marital residence, and that that was... I mean, what's a residence in light of the farming ground? Yeah. Nobody really objected to the use of that term, right? I suppose that's correct. According to the part of the record that I looked at, I know the order was not introduced, but they agreed that she was granted exclusive use of the marital residence, right? Right. And he could access this building for farming. Right. Operations. Right. So it was clear from the record then that she didn't have exclusive possession or use of the shop, but as the trial judge stated, there wasn't any evidence that he had a superior right to be present in the shop than she did. And the defendant's arguing in the reply brief and here today that because the defendant had lawful possession of the shop and that he could forcibly eject Kimberly. And I think Your Honor aptly pointed out that, no, he could forcibly eject trespassers, assuming that the other elements of the affirmative defense were met, not co-tenants or joint tenants or whatever tenancy existed, which, again, is a factual question that we don't know. And then, again, I'd point out that in this appeal, the issue is whether, even if the defendant sufficiently raised this affirmative defense, whether the trial court could have rejected it on any basis in the record, whether there was sufficient evidence for the trial court to reject it on any basis. And the State's arguing that that standard was met here. The defendant's arguing that the defendant reasonably believed that Kimberly was trespassing because he told her to leave and she didn't leave. But, again, there's no proof that she had no legal right to be here. And I'd emphasize that his wishes didn't convert her status into that of a legal trespasser. Again, he testified that he wasn't exactly sure whether she had access. So, in other words, the same argument could take place in the same finding of guilty, had it been that the defendant was on a tractor out in the field and she's following the tractor. Same argument. Because we don't know if she was allowed to do that. We don't know if she was a trespasser out in the middle of the field. Is that correct? It's correct that all we know about the divorce court order was that it awarded her use of the either residence or home or whatever it was that the... So there's no evidence that she had a right to be there or no evidence that she has a right to be on the property other than the home. I disagree with that, Your Honor, because she... I'm just asking a question. No, I understand. Again, she testified that no court order barred her from the shop. And also no court order barred her from the field. That wasn't asked, but she... No, that isn't asked. I presume so. So any place but the house. The court order, in other words, she had the right, everybody, and there was testimony that she had a right to the home. Right, she was living there, yes. But that's it. I mean, the order doesn't say anything about anything else. But you still have to justify by use of force. Right. So that's the whole thing. It's got nothing to do with trespass. It's just force. Or in some way, nature. Yeah. Well, the defendant is arguing that she was trespassing, but again, Your Honor, she did testify that she was not barred from the property at issue here, which was the shop property. So there is evidence that she was not trespassing, if you like, because there was evidence that she was not legally barred from that property, either through a court order or through some edict from the property owner, the defendant's father. Ms. Candler, aren't you essentially saying we're just to view this as a domestic violence violation? Absolutely. And just forget about the whole trespass theory. Absolutely. Except for the fact they raised it. Absolutely. Yes, Your Honor. That's the issue on appeal. Yes, yes. But I mean, that's your position. Yes. Yes. One other point, the defendant in the report, at pages four and five, cites a DeRossett and Petty cases. I'd point out that those cases regard entry onto the property of another, not entry onto the property of a co-tenant or a court tenant or a property on which the person was living. Okay. Thank you. Thank you very much. All right. Rubello. Just to be clear, our contention is that we sufficiently raise the affirmative defense of legal justification and the burden then became the State's to disprove it beyond a reasonable doubt. And I think that the court's order indicating that it wasn't clear who was lawfully in possession. I mean, I don't think there's a question that we introduced evidence that showed Mr. Mathias was lawfully in possession. I don't think there's a dispute that he was allowed to be on the property. The burden shifted to the State. Our contention is the burden shifted to the State, and they had to prove beyond a reasonable doubt that Mrs. Mathias had some legal right to be there. The judge in this case had the right to view, or had the opportunity, actually, to view a video, which is kind of unusual if there'd be a video of his shift, right? I presume it may be unusual. Is this a cell phone video? No, it's in the record, and we've referred to it. It's a security camera showing the outside of it, showing the inside of it. So I wouldn't say the entirety of the transaction's on video, but the majority of it is. But his conclusion of an insulting nature is on the video, and my question to you really is, isn't that pretty broad standard for us to reverse it? What is your belief the standard of review is as to that? As to the insulting nature? As to his finding. As to his finding. Well, on this, we believe the standard is an abuse of discretion, evidence all favorable to the prosecution. But we believe that it's clear that we raised the affirmative defense, and then the burden became the states to disprove it beyond a reasonable doubt, and that didn't occur. And that's why we think this should be reversed. Your affirmative defense is, correct me if I'm wrong, is limited to the trespass issue, correct? Correct. Our affirmative defense is that we raised that he was legally justified in the defense of property, and to raise that we needed to show that he was lawfully in possession of the house and his use of force was reasonable. There's no evidence introduced by the state regarding whether or not the amount of force used was reasonable. And the only evidence introduced by us was that he was lawfully in possession, and I don't believe it's in dispute. The state didn't disprove anything by a reasonable doubt in regards to whether or not his use of force was reasonable or not. Well, I'm just wondering if we acknowledge that he was lawfully in possession, as you have to do under the trespass issue, that never gives you a right, even if there's somebody trespassing to use an unjustifiable use of force, correct? A double negative. You still have to act reasonably when someone comes onto your property. You just can't shoot them, for example, right? I 100% agree with you. And what the evidence was in this case was that his belief was reasonable and the amount of force that he used was. It is captured on video. He pushes her out of the door and locks the door behind him. There was no evidence put on by the state that he used more force than was necessary to get her out of the house or out of the shed. But he had called the police. He tried to. He couldn't get service. I have a question related to the shoving. I think there was some testimony or evidence that her wrist or something was scratched. Is there any way to see kind of how that transpired or could have transpired? Because she wasn't sure if it had to do with him shoving or her losing her balance or something along those lines. Is that something that can be viewed on the video? The video shows the inside shows her being pushed to the door and being pushed out of the door. There's a camera pointing down from the outside that shows her exiting the door when she came out. I mean, the trial court found that she was injured during this process. When she comes out, there's no grasping of the arms or anything like that. But you can't see it. She was scraped in the video. Okay. You don't have to stop. You can continue. But we do believe it's clear that the federal expense was raised, the burden became the state's, and they didn't sustain their burden. And I think that's reflected in the court's order indicating that the evidence just wasn't clear on this point. What relief are you asking for? We would ask that the trial court's judgment be reversed. New trial? In the alternative, yes. Well, are you asking this court to find this a matter of law that your client could not have committed the offense? Your Honor, we'd be asking for a new trial. We'd ask that this conviction be reversed and that it remain the bank for a new trial. Okay. Thank you very much. All right. 516-0362, this matter will be taken under advisement. Thank you for your arguments this morning.